IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>SAN LUIS & RIO GRANDE RAILROAD, INC.<br><br>Debtor. | Lead Bankruptcy Case No. 19-18905-TBM<br><br>Chapter 11 |
| In re:<br><br>SARATOGA AND NORTH CREEK RAILWAY, LLC,<br><br>Debtor-in-Possession. | Bankruptcy Case No. 20-12313-TBM<br><br>Chapter 11 |

**TRUSTEE'S MOTION FOR ENTRY OF ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF MEMBERSHIP INTERESTS IN MASSACHUSETTS COASTAL RAILROAD, LLC (B) APPROVING THE FORM AND MANNER OF NOTICE OF THE AUCTION AND SALE HEARING, (C) SCHEDULING AN AUCTION AND SALE HEARING, AND (D) GRANTING RELATED RELIEF**

William A. Brandt, Jr. in his capacity as the Chapter 11 Trustee (the "**Trustee**") for the San Luis & Rio Grande Railroad, Inc. ("**SLRG**" or the "**Debtor**") files this motion (the "**Bidding Procedures Motion**")[1] pursuant to sections 105(a), 363, 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"); Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and Local Bankruptcy Rule 6004-1, seeking:

(I)  Entry of an order, substantially in the form attached hereto (the "**Bid Procedures Order**"):

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Membership Interest Purchase Agreement (the "MIPA").

1

(A) approving the proposed bidding procedures described herein and annexed to the proposed Bid Procedures Order (the "**Bidding Procedures**"), for the proposed sale of the Debtor's 100% membership interests in Massachusetts Coastal Railroad LLC (as defined more specifically in the MIPA, the "**Membership Interests**");

(B) scheduling an auction (the "**Auction**") for the sale of the Membership Interests (the "**Sale**") for June 19, 2020 and a hearing to consider approval of the Sale; and

(C) approving the form and manner of:

    (i) the notice (the "**Notice of Sale**") that will be filed with this Court and served on all creditors and parties-in-interest regarding the Sale and the related hearing at which this Court will consider approval of the Sale (the "**Sale Hearing**");

In support of this Bidding Procedures Motion, the Trustee respectfully states as follows:

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Colorado (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are §§ 363, 1107, and 1108 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Colorado (the "**Local Rules**").

**General Background**

2. The Debtor owns and operates a railroad that is approximately 150 miles long that primarily supports the transportation of grain, minerals, specialty rock products, and produce in Colorado. Massachusetts Coastal Railroad LLC ("**Mass Coastal**") is wholly owned by the Debtor. Mass Coastal is an operating railroad that provides freight service to southeastern Massachusetts.

3. On February 27, 2017, the Debtor and other affiliated entities entered into a Loan and Security Agreement (the "Loan Agreement") with Big Shoulders Capital, LLC ("Lender") pursuant to which the Borrowers granted Lender a security interest in specified collateral. Mass Coastal is not a borrower under the Loan Agreement, and the Loan Agreement does not list as collateral the membership interests of any of the Borrowers' subsidiaries.

4. On September 9, 2019, pursuant to its rights under the Loan Agreement, Lender commenced a receivership action against the Debtor and Mt. Hood Railroad Company ("Mt. Hood") in the United States District Court for the Northern District of Illinois (the "District Court"), Case No. 19cv06029 (the "Receivership Case"). On September 12, 2019, the District Court entered an order appointing Novo Advisors, as receiver (the "Receiver") over the assets of the Debtor and Mt. Hood (the "Order").

5. On October 16, 2019, a Chapter 11 Involuntary Petition was filed against the Debtor by three unsecured creditors.

6. The Debtor did not oppose the Involuntary Petition, and on November 7, 2019, the Court entered its Order for Relief and Procedure in Involuntary Case, in which it ordered, among other things, "that an order for relief under Chapter 11 of Title 11 of the U.S.

Code is hereby GRANTED."

7. On November 26, 2019, the Receiver filed a motion in the Receivership Case requesting that the receivership be expanded to include Mass Coastal and Cape Cod Central Railroad, Inc. ("Cape Cod Central"), among others (the "Expansion Motion"). Attached to the Expansion Motion was a Resolution dated November 21, 2019 pursuant to which Edwin E. Ellis purported to "authorize and consent" that Mass Coastal be included as part of the Receivership Case. The Expansion Motion recognized that Mass Coastal had been operated independently of the other entities subject to the Receivership Case since 2018 by Christopher Podgurski and that Mr. Podgurski had recently provided the Receiver with an offer to purchase Mass Coastal's and Cape Cod Central's business and assets.

8. On December 30, 2019, the United States Trustee filed its Notice of Appointment of Trustee, in which the United States Trustee appointed "Williams A. Brandt, Jr. to serve as the chapter 11 trustee in this case."

9. On April 24, 2020, the Court granted the motion for the joint administration of the Debtor's Bankruptcy Case and the case of the Debtor's affiliated entity, Saratoga and North Creek Railway, LLC.

**Sale Efforts and Process**

10. Because SLRG is a "railroad" as that term is defined under the Bankruptcy Code, a trustee must always be appointed, and the Secretary of Transportation chooses and submits to the United States trustee a list of five persons who are qualified to serve as a trustee of a railroad. The Trustee was on the list submitted by the Secretary of Transportation. 11 U.S.C. § 1163. In short, the Trustee was chosen by the Department of Transportation to operate SLRG

4

due to his specific railroad experience and acumen. He and his firm were the financial advisors for the chapter 11 trustee for the Montreal, Maine & Atlantic Railway matter, in which the Trustee and his firm managed the day-to-day operations of the railway pending an overall resolution of the case, and the resolution of that case involved multiple sales of the Montreal, Maine & Atlantic assets in both Canada and United States. The Trustee was very active throughout the sales process and during the course of that case, he and his firm became conversant with players in the railroad industry. Additionally, the Trustee has personally served, since 1981, in over 15,000 matters as a Chapter 11 Trustee, a Chapter 7 Trustee, an Examiner, or in similar fiduciary capacities in bankruptcy courts and in other court proceedings throughout the United States and Canada.

11. Prior to the Trustee being appointed, the Receiver hired an investment banker to market the *assets* of the Debtor, Mass Coastal and other entities. Indeed, the Receiver attempted to sell Mass Coastal's assets even before Mass Coastal's assets were included within the Receivership Case. As a result of those efforts, the Receiver received several preliminary letters of intent from potential bidders who were interested in purchasing Mass Coastal's assets as part of a purchase of all assets within the Receivership Case, and it also received two letters of intent from potential bidders who were interested in purchasing *only* Mass Coastal's assets. One of the letters of intent was from Christopher Podgurski, the current operator of Mass Coastal. According to papers filed by the Receiver in both this Court and in the Receivership Case, the Receiver anticipated that a sale of Mass Coastal's assets by the Receiver could achieve $3 million in value to the Receivership Estate.

12. As soon as the Trustee was appointed, he continued the marketing process for both the Debtor and Mass Coastal. He engaged with immediate discussions with Mr.

Podgurski related to his offer and has had multiple discussions with the other parties who had expressed an interest in purchasing Mass Coastal's assets. The Trustee and his advisors have had discussions with over 25 parties who have expressed interest in purchasing either the Debtor's, Saratoga's and/or Mass Coastal's assets.

13. The Trustee has continued to respond to inquiries from prospective buyers. The Trustee has utilized his extensive personal/company database (derived from years of being involved in the railroad business) to essentially re-market the assets of SLRG and Mass Coastal.

14. The Trustee had anticipated filing a bankruptcy petition on Mass Coastal's behalf. The primary reason for filing the petition would have been to obtain a sale of Mass Coastal's assets free and clear of all liens, claims and encumbrances under the Bankruptcy Code. Of particular concern to the Trustee was the amount of Mass Coastal's liability to the Internal Revenue Service ("IRS") related to unpaid employment taxes. This liability was incurred by Mass Coastal before its current management took over operations in 2018. Specifically, the IRS has alleged that Mass Coastal owes it over $3 million which is secured, in part, by a statutory lien on Mass Coastal's assets.

15. The Trustee's efforts to maximize the value of Mass Coastal to the Debtor's estate have paid off. Specifically, the Trustee and Coastal Rail, LLC (the "Stalking Horse Bidder") have negotiated a form of Membership Interest Purchase Agreement ("MIPA" or the "Stalking Horse Bid"), whereby the Stalking Horse Bidder has proposed to purchase the Membership Interests for a total consideration of $952,559.00 (the "Purchase Price"). The Stalking Horse Bidder is an insider of the Debtor, as defined in Bankruptcy Code section

6

101(31). The Stalking Horse Bidder is an affiliate of Mr. Podgurski, who is a current manager of Mass Coastal, which is 100% owned by SLRG.

16. The Trustee now seeks authority to further market-test the transaction contemplated by the Membership Interest Purchase Agreement to ensure that the estate obtains the highest or otherwise best offer for the Membership Interests. As set forth in further detail below, the sale, the MIPA, the proposed bidding procedures (the "Bidding Procedures"), and the related relief requested in this Bidding Procedures Motion are in the best interests of the public as set forth in 11 U.S.C. § 1165, the Debtor's estate, creditors, and parties in interest. Accordingly, the Trustee respectfully requests that the Court grant this Motion.

### The MIPA

17. The Trustee and his professional advisors have identified the Stalking Horse Bidder's bid for the Membership Interests and the auction process provided for under a section 363 sale process as the best way to maximize the value of the estate and to protect the interests of the Debtor's creditors. After extensive negotiations regarding the terms and conditions thereof, the Debtor and the Stalking Horse Bidder have agreed, in principle, to the key terms of the Sale, and have executed the MIPA attached as <u>Exhibit 1</u> hereto, which remains subject to this Court's approval.

18. The Trustee seeks approval of the sale of the Membership Interests to the Stalking Horse Bidder or to a competing bidder that submits a higher and better offer in accordance with the Bidding Procedures (the "Successful Bidder"). For the avoidance of doubt, Mass Coastal's assets and liabilities shall remain unaffected by the sale of the Membership Interests, because the Successful Bidder is essentially buying the stock of Mass Coastal which is

subject to all existing assets and liabilities of the company.

19. The Membership Interests will be sold free and clear of all liens, claims, rights, interests, and encumbrances whatsoever, with all then-existing Encumbrances to attach to the net sale proceeds of the Membership Interests with the same validity, enforceability, and priority, if any, as existed with respect to the Membership Interests as of the Petition Date. The material terms of the proposed sale to the Stalking Horse Bidder or other Successful Bidder are as follows:

| | |
|---|---|
| **Stalking Horse Bidder** | The Stalking Horse Bidder is Coastal Rail, LLC. The Stalking Horse Bidder is an insider of the Debtor, as defined in Bankruptcy Code section 101(31). The Stalking Horse Bidder is an affiliate of Mr. Podgurski, who is a current manager of Mass Coastal, which is 100% owned by SLRG. |
| **Purchase Price** | The Purchase Price is $952,559.00 which consists of $625,000 of cash (the "Cash Purchase Price") plus a relinquishment of any claims held by Mass Coastal to the $327,559.00 in net cash currently held by the Trustee on Mass Coastal's behalf as a result of the assignment of the Section 45G Tax Credits; |
| **Purchased Assets** | The Debtor's membership interests in Mass Coastal. |
| **Assumed Liabilities** | N/A |
| **Closing** | The Closing Date shall occur not later than 15 days following entry of the Sale Order. Closing is subject to, among other conditions, entry of the Sale Order by July 15, 2020. |
| **Deposit** | $125,000. |
| **Break-up Fee** | 5% of the Cash Purchase Price ($31,250). |
| **Expense Reimbursement** | None. |
| **Representations and** | Except as specifically set forth in the MIPA, the Stalking |

| | |
|---|---|
| **Warranties** | Horse Bidder will accept the Membership Interests at Closing on an "As Is" and "Where Is" basis. |
| **Termination** | The MIPA may be terminated in various circumstances, the most significant of which include the following: failure to close by August 15, 2020. |
| **Agreements with Management** | N/A |

## The Bidding Procedures

20. To optimally and expeditiously solicit, receive and evaluate bids in a fair and accessible manner, the Trustee is proposing the Bidding Procedures as annexed to the proposed Bidding Procedures Order attached hereto. The Trustee has determined that the Bidding Procedures establish a framework that is most likely to maximize the value of the Purchased Assets for the benefit of the Debtor's estate and its creditors. Those procedures are summarized in relevant part below.[2]

(a) **Bid Requirements**. Any competing Bid must be submitted in writing and determined by the Trustee, in his reasonable business judgment, to have satisfied the following requirements:

  i. *Assets and Purchase Price*: Each Bid must be a bid to purchase the Membership Interests. Each Bid must clearly set forth the Purchase Price to be paid, including and identifying separately any cash and non-cash components.

  ii. *Deposit*: Each competing Bid must be accompanied by a cash deposit in the amount of $250,000, to be held in an interest bearing escrow account to be identified and established by the Trustee (the "Deposit").

---

[2] The summary of the Bidding Procedures set forth herein is provided for the convenience of the Court and interested parties and is qualified in its entirety by the Bidding Procedures, which are attached hereto as an attached to the proposed Bidding Procedures Order. In the event of any inconsistency between the Bidding Procedures and this summary, the Bidding Procedures shall control. Capitalized terms used in this summary have the meaning ascribed to them in the Bidding Procedures.

    iii. ***Minimum Bid***: The aggregate cash consideration proposed by each Bid must be equal to, or exceed, the sum of (i) the Purchase Price set forth in the Stalking Horse Bid; (ii) the Breakup Fee; plus (iii) 10% of the Cash Purchase Price ("the Overbid Increment".

    iv. ***The Same or Better Terms***: Except as otherwise provided herein, each and every competing Bid must, in the Trustee's business judgment, be on terms the same as or better than the terms of the MIPA. Each competing Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents"). The Bid Documents shall include a copy of the form MIPA clearly marked to show all non-substantive changes requested by the Bidder as well as those changes related to Purchase Price.

    v. ***Sources of Financing***: Each and every competing Bid must indicate the source of cash consideration, including proposed funding commitments and confirm that such consideration is not subject to any contingencies.

b. **Bid Deadline**. Each bid must be transmitted via email (in .pdf or similar format) or other means so as to be actually received by the Trustee, counsel to the Trustee, and counsel to the Stalking Horse Bidder on or before June 16, 2020 at 11:59 p.m. (prevailing Mountain Time) (the "Bid Deadline"). The Trustee must receive the Deposit, in good funds, into an account designated by the Trustee no later than the Bid Deadline.

c. **The Auction**. If the Trustee does not receive a Qualified Bid (other than the Stalking Horse Bid), the Trustee will not conduct the Auction and shall designate the Stalking Horse Bidder's Qualified Bid as the Successful Bid. If one or more timely conforming Initial Overbids are received, the Debtor shall conduct an Auction of the Membership Interests, in which the Stalking Horse Bidder and all other Qualified Overbidders may participate. The Auction shall be conducted at the offices of Markus Williams Young & Hunsicker, LLC on June 19, 2020 at 10:00 a.m. (prevailing Mountain Time), or such other place and time as the Trustee may determine, so long as such change is communicated reasonably in advance to all Qualified Overbidders, the Stalking Horse Bidder and other invitees, if any. If due to the Covid-19 pandemic, the local guidelines in place in Denver on the date of the auction do not permit in-person meetings, the Trustee will conduct the Auction electronically via video-conferencing. The Trustee shall, in any event, permit the submission of auction bids by telephone.

10

    d. **Bidding Increments**. Any Overbid following the initial Minimum Overbid or following any subsequent Prevailing Highest Bid shall be in increments of at least $15,000..

    e. **Backup Bidder**. Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Membership Interests, as determined by the Trustee in the exercise of his reasonable business judgment, shall be required to serve as a backup bidder (the "Backup Bidder"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Trustee (the "Backup Bid").

    f. **Highest or Otherwise Best Bid**. When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Trustee may consider the following factors in addition to any other factors that the Trustee deems appropriate: (i) the amount and nature of the total consideration; and (ii) the likelihood of the Bidder's ability to close a transaction, the timing thereof, and such Bidder's connections with the Debtor.

    g. **Reservation of Rights**. The Trustee reserves the right to modify the Bidding Procedures in his reasonable business judgment in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Partnership Interests.

21. Importantly, the Bidding Procedures recognize the Trustee's fiduciary obligations to maximize sale value, do not impair his ability to consider all qualified bid proposals, and, as noted, preserve the right to modify the Bidding Procedures as necessary or appropriate to maximize value for the Debtors' estate.

### Sale Hearing.

22. The Debtor requests a hearing to consider approval of the Sale to the Successful Bidder (or to approve the MIPA if no Auction is held or the Successful Bid is by the Stalking Horse Bidder) in the courtroom of the Honorable Thomas J. McNamara in the United States Bankruptcy Court for the District of Colorado, 721 19th St., Denver, Colorado 80202 (the

"Sale Hearing").

23. The Debtor shall, within two (2) business days of the entry of the Bid Procedures Order, serve a copy of the Sale Motion, the proposed form of Sale Order, the Bid Procedures Order, and a copy of the Notice of Sale, substantially in the form annexed hereto as Exhibit 3, by first-class mail on the following parties (collectively, the "Notice Parties"): (i) all entities known to have expressed an interest in a financing or sale transaction with respect to the Trustee, as evidenced by executing an NDA with the Trustee; (ii) any entities known to have asserted any Encumbrance in or upon the Membership Interests; (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (iv) the Office of the United States Trustee; (v) the Internal Revenue Service; (vi) all entities that have requested notice in accordance with Bankruptcy Rule 2002; (vii) counsel to the Stalking Horse Bidder; and (vii) all other known creditors of the Debtor.

24. The Trustee respectfully submits that the Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (a) the date, time, and place of the Auction (if one is held); (b) the Bidding Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) a reasonably specific identification of the Membership Interests; and (e) a description of the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the Sale proceeds.

25. The Trustee further submits that notice of this Motion, the Sale Motion,

and the related hearing to consider entry of the Bidding Procedures Order, coupled with service of the Sale Notice, constitute good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002 and Local Rules 2002-1, 6004-1, and 9013-1. The Trustee proposes that no other or further notice of the Sale shall be required. Accordingly, the Trustee requests that this Court approve the form and manner of the Sale Notice in connection with the Bidding Procedures.

26. The Trustee has examined the alternatives to a sale of the Membership Interests and has determined that, in light of the Debtor's financial situation, the fact that Mass Coastal's assets have been marketed for over eight months, a more viable alternative to sale of the Membership Interests does not exist and this sale will realize the value for the Membership Interests. The Trustee determined that the sale of the Membership Interests optimizes value for the Debtors' estates and creditors.

27. For the reasons stated above, and in light of the obvious benefits to the estate, the Trustee has determined, in the exercise of his business judgment, to consummate the proposal submitted under the MIPA pursuant to the bidding and auction procedures set forth herein.

### The Proposed Bidding Procedures Constitute an Appropriate Process to Obtain the Highest or Best Bid

28. The Trustee requests that the Court approves the Bidding Procedures. A debtor's or trustee's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See, In re Integrated Resources, Inc.*, 147 B.R.

650, 656–7 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

29. The paramount goal in any proposed sale of property of the estate is to maximize proceeds. *See In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (internal citations omitted).

30. As discussed above, the Trustee believes in his reasonable business judgment that the Bidding Procedures and the Sale, with Stalking Horse Bidder as the "stalking-horse" bidder, is the best strategy for maximizing the value of the Membership Interests in Mass Coastal for the benefit of the various stakeholders. *See In re Psychometric Sys., Inc.*, 367 B.R. at 675. Moreover, the Bidding Procedures, and the use of a Minimum Overbid and Bidding Increments, will ensure a competitive and efficient bidding process which excludes disingenuous bidders while preserving the participation of the Stalking Horse Bidder.

31. Indeed, break-up fees and other forms of bidding protections are a normal and, in many cases, necessary component of significant sales conducted under section 363 of the Bankruptcy Code: "Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . In fact, because the [trustee] has a duty to encourage bidding, break-up fees can be ***necessary*** to discharge [such] duties to maximize value." *Integrated Res*.,

147 B.R. at 659–60 (emphasis added). Specifically, bid protections "may be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking." *995 Fifth Ave.*, 96 B.R. at 28 (quotations omitted); *see also Integrated Resources*, 147 B.R. at 660–61 (bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid"); *In re Hupp Int'l Indus., Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("[W]ithout such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's . . . due diligence.").

32. If the Court does not approve the Bid Protections, the Stalking Horse Bidder may elect not to serve as the stalking horse, to the detriment of the Debtors' estate. Further, if the Bid Protections were to be paid, it will be because the Trustee has received higher or otherwise superior offers for the Membership Interests. In short, the proposed Breakup Fee is fair and reasonable under the circumstances because it constitutes, at not more than 5% of the Cash Purchase Price, a "fair and reasonable percentage of the proposed purchase price." *Integrated Res.*, 147 B.R. at 662 (*quoting 995 Fifth Ave.*, 96 B.R. at 28); *see also In re Twenver*, 149 B.R. 954, 956 (Bankr. D. Colo. 1992) (discussing "topping fee" factors). Accordingly, the Bid Protections should be approved.

33. The proposed timeline set forth in the Bidding Procedures is reasonable in light of the circumstances. The Trustee is not utilizing DIP funding and it is imperative that the estate obtain additional funds to operate the Debtor's business. Under the Trustee's proposed timeline, the Bid Deadline is June 16, 2020, and thus there will be a marketing period in excess of one month during which the Trustee will solicit bids and potential bidders can conduct due diligence. The Trustee submits that this is more than sufficient time to continue to market the

Membership Interests.  As noted above, Mass Coastal's assets have been extensively marketed over the past eight months,  Accordingly, most potential buyers are familiar with the opportunity.  In addition to providing appropriate notice, the Trustee will continue to contact various parties who have previously expressed an interest in acquiring assets of the Debtor and/or Mass Coastal to determine whether such parties are interested in submitting a bid.

34. In sum, the Bid Procedures are appropriate, reasonable, and designed to ensure the most robust bidding and auction process possible for the Membership Interests.

**Notice**

35. A copy of this Motion will be provided to (a) the Office of the United States Trustee; (b) the twenty largest unsecured creditors of the Debtors; (c) all parties who are known by the Trustee to assert liens with respect to the Membership Interests, if any; and (d) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure.  The Trustee respectfully submits that such notice is sufficient, and requests that the Court find that no further notice of the relief requested herein is required.

**WHEREFORE**, the Trustee respectfully requests that this Court grant this Sale Motion by first (I) entering the Bid Procedures Order (A)  approving the proposed bidding procedures described herein for the proposed sale of the Debtor's membership interests in Massachusetts Coastal Railroad, LLC; (B)  scheduling an auction (the "Auction") for the sale of the Membership Interests (the "Sale") for June 19, 2020 and a hearing to consider approval of the Sale; and (C)  approving the form and manner of: (i) the notice (the "Notice of Sale") that will be filed with this Court and served on all creditors and parties-in-interest regarding the Sale and

the related hearing at which this Court will consider approval of the Sale (the "Sale Hearing");

and second (II) granting such other and further relief as is just and proper.

Dated: May 11, 2020

                    MARKUS WILLIAMS YOUNG AND
                    HUNSICKER LLC

                    *s/Jennifer Salisbury*
                    Jennifer Salisbury (CO Bar No. 37168)
                    1775 Sherman Street, Suite 1950
                    Denver, CO 80203
                    Telephone: 303-866-0102
                    Facsimile: 303-830-0809
                    Email: jsalisbury@markuswilliams.com

                    Counsel for the Trustee