**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re: ) | |
| ) | Lead Bankruptcy Case No. 19-18905-TBM |
| SAN LUIS & RIO GRANDE RAILROAD, INC. ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |
| In re: ) | |
| ) | |
| SARATOGA AND NORTH CREEK RAILWAY, ) | Bankruptcy Case No. 20-12313-TBM |
| LLC, ) | |
| ) | Chapter 11 |
| Debtor-in-Possession. ) | |
| ) | |

**ORDER AUTHORIZING AND APPROVING THE SALE OF
SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTOR FREE AND CLEAR OF
LIENS, CLAIMS AND ENCUMBRANCES AND WAIVING THE 14 DAY STAY OF
FED.R.BANKR.P. 6004(H)**

This matter having come before this Court on the motion of William A. Brandt, Jr. in his capacity as the Chapter 11 Trustee (the "**Trustee**") for the San Luis & Rio Grande Railroad, Inc. ("**SLRG**" or the "**Debtor**") for Order Pursuant to §§ 105(a) and 363(b) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq*. (the "**Bankruptcy Code**"); Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court of the District of Colorado (the "**Local Rules**") (A) Authorizing And Approving the Sale of Substantially All of the Assets of the Debtor Free And Clear Of Liens, Claims And Encumbrances, And (B) Waiving The 14-Day Stay Of Fed. R. Bankr. P. 6004(H) [Docket No. 840] (the "**Sale Motion**"); and this Court having entered an Order dated November 9, 2022, approving, *inter alia*, the Bidding Procedures and Buyer Protections and Setting Sale Hearing [Docket No. 877] (the "**Bidding Procedures Order**"); and an Auction of the substantially all of the Debtor's assets (the "**Property**") having been held in accordance with the Bidding Procedures Order previously approved by this Court; and this Court having held a sale hearing on November 28, 2022 (the "**Sale Hearing**") to consider the Sale Motion and approval of the sale of the Property (the "**Sale**") to KCVN LLC or its permitted assignee or designee ("**KCVN**") pursuant to the Asset Purchase Agreement dated as of November 17, 2022 (the "**Asset Purchase Agreement**"), between SLRG and KCVN, which assets are identified as the "Purchased Assets" in the

Asset Purchase Agreement (the "**Purchased Assets**"); and a reasonable opportunity to object or be heard regarding the relief granted herein having been afforded to all parties-in-interest; and this Court having reviewed and considered the Sale Motion and the exhibits thereto; accepted the proffers of the testimony of William Brandt and Matt Prince, and it appearing that granting the relief requested in the Sale Motion, approval of the Sale, and, there being no evidence presented to the contrary, the entry of this Sale Order is necessary and in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest; and it appearing that no other or further notice need be given regarding the entry of this Sale Order; the objections of KCVN, Big Shoulders Capital, LLC ("**BSC**"), the South Middle Creek Road Association, and KMC Energy III, Inc/South Fork Meadows, LLC having been resolved, and the objection of San Luis Valley Great Outdoors having been stricken; and upon the record of this Case; and after due deliberation thereon; and good cause appearing therefor, and it is hereby

**FOUND AND DETERMINED THAT:**[1]

A. <u>Jurisdiction and Venue.</u>  This Court has jurisdiction over the Sale Motion and the transactions contemplated by the Sale Motion pursuant to 28 U.S.C §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C § 157(b)(2)(N).  Venue of this Case and the Sale Motion is proper pursuant to 28 U.S.C §§ 1408 and 1409.

B. <u>Statutory Predicates.</u>  The statutory predicates for the relief sought in the Sale Motion are sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014.

C. <u>Notice</u>.  As evidenced by the certificates of service previously filed with this Court, (i) proper, timely, adequate, and sufficient notice of the Sale Motion has been provided in accordance with sections 102(1), and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1; (ii) such notice was good and sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Sale Motion or of the entry of this Sale Order is necessary or shall be required.

D. <u>Opportunity to Object.</u>  Reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested in the Sale Motion has been afforded to all interested persons and entities as identified in the Trustee's Certificate of Service [Docket No. 844], including without limitation: (i) all entities known to the Trustee to have expressed an interest in a transaction with respect to the Debtor and the Property; (ii) any entities known to have asserted any liens, security interests, encumbrances, claims or interests in or upon the Purchased Assets (collectively, the "**Encumbrances**"); (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (iv) the Office of the

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

United States Trustee; (v) the Internal Revenue Service; (vi) all entities that have requested notice in accordance with Bankruptcy Rule 2002; and (vii) all other known creditors of the Debtor.

E. Ownership. The Debtor owns and operates a railroad that is approximately 150 miles long that primarily supports the transportation of grain, minerals, specialty rock products, and produce in Colorado. The Debtor is the sole and lawful owner of the Purchased Assets and no other person or entity has any ownership right, title or interest therein. The Purchased Assets are property of the Debtor's estate, and title thereto is vested in the Trustee of the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.

F. Involuntary Petition. On October 16, 2019, a Chapter 11 Involuntary Petition [Docket No. 1] was filed against the Debtor by three unsecured creditors.

G. Order for Relief. The Debtor did not oppose the Involuntary Petition, and on November 7, 2019, the Court entered its Order for Relief and Procedure in Involuntary Case [Docket No. 18], in which it ordered, among other things, "that an order for relief under Chapter 11 of Title 11 of the U.S. Code is hereby GRANTED."

H. Appointment of Chapter 11 Trustee. On December 30, 2019, the United States Trustee filed its Notice of Appointment of Trustee [Docket No. 69], in which the United States Trustee appointed "William A. Brandt, Jr. to serve as the chapter 11 trustee in this case." The Trustee has full corporate power and authority to consummate the Sale pursuant to the Asset Purchase Agreement, and all other documents contemplated thereby; and no consents or approvals, other than those expressly provided by the Asset Purchase Agreement, are required for the Trustee to consummate the Sale.

I. Marketing Process. The marketing process implemented by the Trustee, as set forth in the Sale Motion, was fair and adequate, provided a reasonable opportunity for interested parties to submit bids or offers, and was reasonably calculated to result in the best value received for the Purchased Assets.

J. Business Justification. The Trustee has articulated good, sufficient, and sound business reasons for entering into the Asset Purchase Agreement and consummating the Sale. The Sale is contemplated as part of the Trustee's orderly liquidation of Debtor's assets for the benefit of its creditors. It is a reasonable exercise of the Trustee's business judgment to consummate the Sale.

K. Results of the Marketing Process. The Trustee received an offer from OmniTrax SLRG, LLC ("**OmniTrax**") to purchase the Purchased Assets. The Trustee and OmniTrax negotiated the Agreement, whereby OmniTrax proposed to purchase the Purchased Assets for a total consideration of $5,750,000.00, subject to higher and better offers (the "**OmniTrax Bid**").

L. After receipt of the OmniTrax Bid and in accordance with the Bid Procedures Order, the Trustee received two additional bids for the Purchased Assets. On November 2, 2022, KCVN submitted a Qualified Bid of $6,050,000.00, as set forth in the asset purchase agreement attached to its Objection to the Sale Motion [Docket No. 865]. Additionally, on November 2, 2022, BSC submitted a Qualified Bid (as such term is defined in the Bidding Procedures) consisting of $4,000,000.00 in cash plus a credit bid of $1,750,000.00, as set forth in the asset purchase agreement attached to its Objection to the Sale Motion [Docket No. 867].

M. On November 17, 2022, the Trustee held the auction authorized in the Bidding Procedures Order. OmniTrax, KCVN and BSC appeared at the auction. Sixty-two (62) bids were made in the course of the auction. The final bid was submitted by KCVN for a cash Purchase Price, as defined in the Asset Purchase Agreement, of Ten Million Seven Hundred Dollars ($10,700,000.00). OmniTrax submitted the second highest cash bid of Ten Million Five Hundred Thousand Dollars ($10,500,000.00.) Pursuant to the Bid Procedures Order, BSC was then provided the opportunity to submit a bid with a credit bid component. BSC elected not to bid at the auction.

N. <u>Highest or Otherwise Best.</u> In a valid and sound exercise of his business judgment, the Trustee has selected the final bid of $10,700,000.00 of KCVN, as set forth in the Asset Purchase Agreement, as the highest and best bid for the Purchased Assets. The Trustee selected OmniTrax as the back-up bidder at the purchase price, as defined in the applicable asset purchase agreement, of Ten Million Five Hundred Thousand Dollars ($10,500,000.00), in the event KCVN fails to close in conformity with the Sale Order and the Bidding Procedures. Accordingly, KCVN is the Successful Bidder with the Successful Bid (as such terms are defined in the Bidding Procedures Order) and is the party to the Asset Purchase Agreement pursuant to which the Purchased Assets shall be purchased for $10,700,000.00. As established by the record of the Sale Hearing, the Bidding Procedures Order has been complied with in all material respects by the Debtor and KCVN. The Bidding Procedures and the Auction afforded a full, fair, and reasonable opportunity for any entity or person to make a higher or otherwise better offer to purchase the Purchased Assets.

O. <u>Arms' Length Transaction</u>. The terms and conditions of the Sale as set forth in the Asset Purchase Agreement were negotiated, proposed, and agreed to by the Trustee and KCVN as parties thereto without collusion, in good faith, and at arm's-length. Further, KCVN is not an "insider" of the Debtor as that term is defined in 11 U.S.C. § 101(31). Specifically, KCVN has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among interested parties.

P. <u>Good Faith</u>. Neither the Trustee nor KCVN has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code to the Sale. Specifically, neither the Trustee nor KCVN has acted in a collusive manner with any person, and the consideration provided by KCVN for the Purchased Assets was not

controlled by any agreement among KCVN and any other persons. KCVN is a "good faith purchaser" entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code with respect to the sale of the Purchased Assets. KCVN proceeded in good faith in all respects in connection with the Sale in that: (i) KCVN in no way induced or caused the chapter 11 filing of the Debtor; (ii) KCVN recognized that the Trustee was free to deal with any other party interested in acquiring the Purchased Assets; and (iii) all payments to be made by KCVN pursuant to the Asset Purchase Agreement in connection with the Sale have been disclosed.

   Q. <u>Free and Clear</u>. The transfer of the Purchased Assets to KCVN will be a legal, valid, and effective transfer of the Purchased Assets and will, upon the occurrence of the Closing, vest KCVN with all right, title, and interest of the Debtor in and to the Purchased Assets free and clear of all obligations, rights, interests, and Encumbrances, except as otherwise specifically provided in the Asset Purchase Agreement. Except as specifically provided in the Asset Purchase Agreement or as otherwise set forth in this Sale Order, KCVN shall have no liability for any claims against the Debtor or its estate or any liabilities or obligations of the Debtor or its estate. Any and all obligations, rights, interests and Encumbrances against the Purchased Assets, as of the date of closing of the Sale, shall be released from the Purchased Assets and shall attach to the proceeds of the Sale in their order of priority under applicable non-bankruptcy law. As a condition to purchasing the Purchased Assets, KCVN requires that the Purchased Assets be sold free and clear of all obligations, rights, interests, and Encumbrances. A sale of the Purchased Assets other than one free and clear of all obligations, rights, interests and Encumbrances would adversely impact the Debtor's estate and would yield substantially less value for the Debtor's estate, with less certainty than the Sale. Therefore, the Sale contemplated is in the best interests of the Debtor, its estate and creditors, and all other parties-in-interest. The Trustee may sell the Purchased Assets free and clear of all obligations, rights, interests and Encumbrances in accordance with section 363 of the Bankruptcy Code because one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied as set forth in the following:

   (a) The Alamosa, Rio Grande, Huerfano, Costilla, and Conejos Counties have either consented to the sale free and clear of their liens or their claims (as allowed by this Court) will be paid in full from the proceeds of the Sale.

   (b) Subject to Paragraph 5 of this Order, BSC has consented to the Sale of the Purchased Assets free and clear of its security interest.

   (c) The allowed claim of the Colorado Department of Revenue will be paid in full from the proceeds of the Sale pursuant to a plan of reorganization.

   (d) The South Middle Creek Road Association has consented to the Sale.

      (e)    San Luis Valley Development Group has consented to the Sale free and clear of its security interests.

      (f)    The interests in the Purchased Assets are liens and the purchase price for the Purchased Assets is greater than the aggregate value of all liens on the Purchased Assets.

    R.    <u>Compliance with Non-Bankruptcy Law.</u>  In satisfaction of 11 U.S.C. §§ 363(d) and 541(f), the transfer of Purchased Assets as contemplated by the Sale complies with applicable non-bankruptcy law governing such a transfer. In particular, the Sale will not close unless and until the Surface Transportation Board authorizes the transfer of ownership of the railroad.

    S.    <u>Waiver of Rule 6004(h).</u>  The Trustee has articulated good cause for waiver of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure under the circumstances. Time is of the essence. In order to maximize the value of the Debtor's assets, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the Asset Purchase Agreement. Accordingly, there is cause to waive the stay contemplated by Bankruptcy Rule 6004.

**NOW THEREFORE, BASED UPON THE FOREGOING FINDINGS OF FACT, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, EFFECTIVE IMMEDIATELY, THAT:**

    1.    <u>Sale Motion</u>.  The relief requested in the Sale Motion is granted to the extent set forth herein.

    2.    <u>Objections</u>.  Any objections or responses to the relief granted herein that have not been overruled, withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled in all respects on the merits.

    3.    <u>Sale Approval</u>.  The Asset Purchase Agreement (including all exhibits, schedules, and annexes thereto), and all of the terms and conditions thereof, is hereby approved. The Trustee is authorized and directed to execute and deliver, perform under, consummate, and implement the Asset Purchase Agreement pursuant to and in accordance with the terms and conditions thereof, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, and to take all further actions as may be requested by KCVN for the purpose of assigning, transferring, granting, conveying, and conferring to KCVN the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement, without any further corporate authorization. KCVN is authorized to consummate the Sale pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement.

4. <u>Transfer of the Purchased Assets</u>. Pursuant to Bankruptcy Code sections 105 and 363, the transfer of the Purchased Assets to KCVN at Closing pursuant to, and subject to the terms of, the Asset Purchase Agreement shall constitute a legal, valid, and effective transfer of the Purchased Assets, and shall, upon the consummation of the Closing, vest in KCVN all right, title, and interest of the Trustee in and to the Purchased Assets. Upon the occurrence of the Closing, this Sale Order shall be considered, and constitute for any and all purposes, a full and complete general assignment, conveyance, and transfer of the Purchased Assets acquired by KCVN under the Asset Purchase Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to KCVN.

5. <u>Free and Clear</u>. Except as otherwise provided for in the Agreement, the transfer of the Purchased Assets shall vest KCVN with all right, title, and interest of the Debtor in the Purchased Assets pursuant to 11 U.S.C. § 363(f), free and clear of any and all Encumbrances, interests, or claims, whether arising by statute or otherwise and whether arising before or after the commencement of this Chapter 11 Case, whether known or unknown, including, but not limited to, Encumbrances, interests, or adverse claims of or asserted by any of the creditors of the Debtor or any other third party. All such Encumbrances or interests shall attach to the net proceeds of the Sale, with the same priority, validity, force, and effect as they now have against the Purchased Assets, and in the case of BSC, the Trustee shall immediately remit the sum of $2,400,000.00 to BSC from such proceeds at the closing on account of BSC's allowed secured claim (the "**BSC Payment**"). Subject to the Encumbrances, interests or claims attaching to the proceeds of the Sale and the BSC Payment at closing, this Sale Order shall be effective as a determination that, as of the closing, all Encumbrances, interests, or adverse claims of any kind or nature whatsoever existing against the Purchased Assets prior to such closing have been unconditionally released, discharged, and terminated as to the Purchased Assets, and that the conveyances described herein have been effected. Without limiting the generality of the foregoing, all liens for real estate taxes arising prior to the closing shall be unconditionally released, discharged, and terminated as to the Purchased Assets.

6. <u>KMC Energy III, Inc/South Fork Meadows, LLC</u>. Nothing in this Sale Order or the Asset Purchase Agreement shall effect the substantive rights of KMC Energy III, Inc. or South Fork Meadows, LLC under the 2009 purchase agreement between the Debtor and KMC Energy III, Inc.

7. <u>Self-Executing</u>. The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of liens, claims, interests, and Encumbrances shall be self-executing, and neither the Trustee, nor KCVN shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order.

8. <u>Successor</u>. KCVN is not and shall not be deemed a "successor" to the Debtor or its estate as a result of the consummation of the Sale or this Sale Order or any other event occurring in this Case under any theory of law or equity, and KCVN shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtor and/or its estate with respect to the Purchased Assets or otherwise, including, but not limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability except as expressly provided in the Asset Purchase Agreement.

9. <u>Binding Order</u>. The terms and provisions of the Asset Purchase Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Trustee, the Debtor, its estate, its creditors, KCVN and their respective affiliates, successors and permitted assigns, and any affected third parties.

10. <u>Plan of Reorganization or Liquidation</u>. Nothing contained in any plan of reorganization or liquidation confirmed in this Case or the order of confirmation confirming any such plan shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the provisions of this Sale Order.

11. <u>Retention of Jurisdiction</u>. To the extent provided for in 28 U.S.C. §§ 157 and 1334, this Court retains and shall have exclusive jurisdiction over any matter or dispute arising from or related to this Sale Order and the Asset Purchase Agreement and to interpret, implement, enforce and endorse the terms and provisions thereof and any amendments thereto, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) decide any disputes concerning (i) this Sale Order and the Asset Purchase Agreement, the rights and duties of the parties hereunder or thereunder or any issues relating to the Asset Purchase Agreement and this Sale Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, (ii) the status, nature and extent of the Purchased Assets, and (iii) all issues and disputes arising in connection with the relief authorized herein; and (b) compel (i) delivery of the Purchased Assets to KCVN; or (ii) delivery of the Purchase Price or performance of other obligations owed to the Trustee.

12. <u>Good Faith</u>. The Sale is undertaken by KCVN in good faith, as that term is used in section 363(m) of the Bankruptcy Code. KCVN is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Sale Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment under the Asset Purchase Agreement or obligation or right granted pursuant to the terms of this Sale Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur shall be governed in all respects by the original provisions of this Sale Order or the

Asset Purchase Agreement, as the case may be. The Sale approved by this Sale Order is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

15. Back-Up Bidder. In the event that KCVN does not close pursuant to the terms of this Sale Order and the Asset Purchase Agreement, OmniTrax, as the back-up bidder, shall be authorized to purchase the Purchased Assets pursuant to the applicable asset purchase agreement, and all protections and rights granted to KCVN under this Sale Order shall inure to OmniTrax upon the close of the sale of the Purchased Assets to OmniTrax at the back-up purchase price of $10,500,000.00.

14. Modifications. Non-substantive changes to the Asset Purchase Agreement and any related agreements, documents, or other instruments, including modifications, amendments, or supplements may be agreed upon by the parties in accordance with the terms thereof, without further order of this Court.

15. Order Effective Immediately. Notwithstanding Bankruptcy Rules 6004(h), 606(d) and 7052, the effectiveness of this Sale Order shall not be stayed for 14 days after entry on the docket. This Sale Order shall be effective and enforceable immediately upon entry. KCVN and the Trustee are authorized to consummate the Sale and cause the Closing to occur as promptly as is practicable following the entry of this Sale Order.

Dated: November 29, 2022

BY THE COURT

*Thomas B. McNamara*
Thomas B. McNamara
United States Bankruptcy Judge

9